UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DARLENE PAGE, Personal Representative of
the Estate of DANNY PAGE, Deceased,

    Plaintiff,

v.

CHOICE HOTELS INTERNATIONAL, INC.,
COMFORT SUITES INC., and WESTWOOD
OF MARQUETTE, INC.,

    Defendants.
                                  /

File No. 2:04-CV-13

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This dispute arises from the unfortunate death of Danny Page while he was a guest at Defendants' hotel in Marquette, Michigan. Plaintiff Darlene Page, the personal representative of decedent Danny Page, ("Page") seeks compensatory damages based upon the hotel staffs' failure to supervise the hotel swimming pool. Before the Court is Defendant Westwood of Marquette Inc.'s ("Westwood") motion for summary judgment contending that Page is unable to establish a prima facie case of negligence. After reviewing the record, the Court finds that there are no genuine issues of material fact regarding the duty owed by Westwood to Page. Accordingly, the Court will grant Westwood's motion for summary judgment.

I.

The material facts are not in dispute.[1]  Danny Page was a citizen of Montana who traveled regularly to the Upper Peninsula of Michigan on business.  On October 24, 2002, Page was a guest at the Comfort Suites Inn owned by Westwood in Marquette, Michigan. During that afternoon, Page entered the pool and hot tub area alone.  The pool area is not supervised because Westwood does not employ lifeguards.  Page first entered the hot tub.  At some point thereafter Page moved to the swimming pool.  While in the pool, Page suffered a medical episode rendering him unconscious.  Thereafter, a hotel employee discovered Page floating face down in the pool.  Although he was momentarily revived through CPR, he unfortunately later died while at the local hospital.

The pool in which Page was swimming at the time of his death is inside the hotel building.  The pool itself is approximately 860 square feet with a maximum depth of five feet. Westwood posted two warning signs in the pool area informing guests that there was no lifeguard on duty and warning guests of the potential dangers of extended use of the hot tub.  Westwood has an internal video surveillance system in their hotel.  The system consists of six cameras in various locations around the hotel.  The camera locations give a view of the front desk, two hallways, the pool area, an exercise area, and a private office area. The system feeds into a monitor in an office area at the front desk.  The monitor cycles

---

[1]The facts are taken from the affidavit and deposition testimony of Brian Jensen, Westwood's general manager, as well as a surveillance video of the hotel.  See Exhibits 1 and 3 attached to Defendant's brief.

through each camera view at four second intervals. Westwood employees do not constantly monitor the surveillance system.

Before the Court is Westwood's motion for summary judgment contending that they did not owe Page a duty to monitor the pool area because it was an open and obvious danger. Further, they argue Michigan law does not impose a duty on a hotel owner to constantly monitor its video surveillance cameras to ensure the safety of its guests.

II.

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005); *Layne v. Bank One, Ky, N.A.*, 395 F.3d 271, 275 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 301 (6th Cir. 2005).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden then shifts

to the nonmoving party to come forward with evidence showing that there is a genuine issue of material fact that must go to trial. *Anderson,* 477 U.S. at 256. To sustain this burden, a plaintiff may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *Daniel v. Cantrell*, 375 F.3d 377, 381 (6th Cir. 2004). Rather, the party opposing a motion for summary judgment has the burden to come forth with requisite proof to support his legal claim, particularly where he has had an opportunity to conduct discovery. *Cardamone v. Cohen*, 241 F.3d 520, 524 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient to create a genuine issue of material fact. *Humenny v. Genex Corp.*, 390 F.3d 901, 904 (6th Cir. 2004).

### III.

In order to establish a prima facie case of negligence a plaintiff must prove four elements: duty, breach of that duty, causation, and damages. *Fultz v. Union-Commerce Assoc.*, 470 Mich. 460, 463, 683 N.W.2d 587, 590 (2004). "The threshold question in a negligence action is whether the defendant owed a duty to the plaintiff. 'It is axiomatic that there can be no tort liability unless defendants owed a duty to plaintiff.'" *Id.* (quoting *Beaty v. Hertzberg & Golden, PC*, 456 Mich. 247, 262, 571 N.W.2d 716, 723 (1997)). The existence of a legal duty is a question of law. *Valcaniant v. Detroit Edison Co.*, 470 Mich. 82, 86, 679 N.W.2d 689, 691 (2004). This case turns on the duty owed by Westwood, a

possessor of land, to Page, an invitee.[2]  "In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516, 629 N.W.2d 384, 386 (2001).

This duty, however, is not absolute.  While a premises possessor has a duty to exercise reasonable care in protecting invitees, this does not transform them into insurers of the invitees' safety.  *See O'Donnell v. Garasic*, 259 Mich. App. 569, 573-74, 676 N.W.2d 213, 217 (2004) (quoting *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 614, 537 N.W.2d 185, 188 (1995)).  For instance, this duty does not extend to the removal of open and obvious dangers. *Lugo*, 464 Mich. at 516, 676 N.W.2d at 386.  "[W]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Id.* (quoting *Riddle v. McLouth Steel Prod. Corp.*, 440 Mich. 85, 96, 485 N.W.2d 676, 681 (1992)).  In order to determine if a condition is "open and obvious," the Court must use an objective standard. *See Mann v. Shusteric Enter., Inc.*, 470 Mich. 320, 329, 683 N.W.2d 573, 577 (2004).  "A condition is open and obvious

---

[2]Page attempts to raise an issue of fact as to the nature of Westwood and Page's relationship, asserting that it could be a landlord-tenant relationship.  This is completely without merit.  Page was unquestionably a guest of Westwood's hotel.  Accordingly, Page was an invitee on Westwood's property. *See e.g.*, *Upthegrove v. Myers*, 99 Mich. App. 776,779, 299 N.W.2d 29, 31 (1980) (citing *Keech v. Clements*, 303 Mich. 69, 73, 5 N.W.2d 570, 571 (1942)).

if it is reasonable to expect an average person of ordinary intelligence to discover the danger upon casual inspection." *O'Donnell*, 259 Mich. App. at 574, 676 N.W.2d at 217 (citing *Hughes v. PMG Bldg., Inc.*, 227 Mich. App. 1, 10, 574 N.W.2d 691, 695 (1997)).

In this case, the danger of swimming alone in an unsupervised pool is open and obvious, as a matter of law, to a reasonably prudent person. Therefore, Westwood did not have a duty to protect or warn Page of this danger. *Lugo*, 464 Mich. at 516, 676 N.W.2d at 386, *Riddle*, 440 Mich. at 96, 485 N.W.2d at 681. Although the danger of swimming alone in an unsupervised pool would be apparent to an average person, Westwood also alerted pool users that they were not being supervised. Westwood prominently displayed warning signs informing pool users that there was no lifeguard on duty and warned guests about the health risks and dangers of prolonged use of the hot tub while unsupervised. *See* Exhibit 2 attached to Defendant's Brief in Support of Summary Judgment. Under the circumstances, the danger of using the unsupervised pool and hot tub would be readily apparent to a reasonable person of ordinary intelligence. *O'Donnell*, 259 Mich. App. at 574, 676 N.W.2d at 217. Therefore, Westwood did not have a duty to protect Page from the danger of the unsupervised pool.

This conclusion is reinforced by a review of the dangers that Michigan courts have found to be "open and obvious." *See e.g.*, *Lugo*, 464 Mich. at 521, 629 N.W.2d at 388-89 (parking lot pothole); *Bertrand*, 449 Mich. at 621, 537 N.W.2d at 191 (unmarked step at a public restroom); *O'Donnell*, 259 Mich. App. at 575, 676 N.W.2d at 217-18 (narrow and steep staircase in a resort cabin). In each of these cases, the court concluded that an average

person, upon viewing the condition, would recognize the danger presented. Central to the conclusion that the condition at issue was "open and obvious" was the fact that these conditions were readily observable and were common in everyday life. *See e.g. Bertrand*, 449 Mich. at 616, 537 N.W.2d at 190 ("[B]ecause steps are the type of everyday occurrence that people encounter . . . a reasonably prudent person will look where he is going, will observe the steps, and will take appropriate care for his own safety.") In the same way, a shallow swimming pool without a lifeguard at a hotel is typical in modern life and the danger presented by swimming alone is such that a reasonably prudent person would recognize it and take appropriate care for their safety.

Finally, the Court's conclusion is made pellucid by a line of cases holding that the dangers of above ground pools are open and obvious as a matter of law. *See Glittenberg v. Doughboy Recreational Indus.*, 441 Mich. 379, 491 N.W.2d 208 (1992) (holding, in the products liability context, that the open and obvious danger doctrine precludes recovery for dangers associated with the use of an above ground pool); *Stopczynski v. Woodcox*, 258 Mich. App. 226, 671 N.W.2d 119 (2003) (holding, in the premises liability context, that the dangers of an above ground pool are open and obvious to a minor and noting that to hold otherwise would "essentially require that all swimming pools in Michigan shallow enough to allow a diver to hit bottom be removed."). The reasoning in *Stopczynski* applies with equal force to this case. Therefore, the Court concludes that Defendant is entitled to

summary judgment on Plaintiff's premises liability claim under the open and obvious danger doctrine.[3]

Moreover, the Court has been unable to find any authority imposing a common law duty upon a premises owner to supervise a swimming pool area. In fact, the measures taken by Westwood in this case appear to be completely consistent with the requirements of state law. The Michigan Department of Environmental Quality has promulgated rules governing the operation and use of public swimming pools. *See* MICH. ADMIN. CODE r. 325.2191–.2199 (2005). In particular, Rule 2198 requires that a swimming pool owner must provide a lifeguard only if one of the following requirements is satisfied: 1) the pool is owned by a governmental entity, 2) the total water surface area is more than 2,400 square feet, or 3) a diving board is provided. MICH. ADMIN. CODE r. 325.2198(1) (2005). Rule 2198 also mandates that if a swimming pool is not required to provide a lifeguard, "a swimming pool owner or operator shall prominently display a sign warning that there is no lifeguard on duty." MICH. ADMIN. CODE r. 325.2198(5) (2005).

---

[3]The Court is mindful that Michigan law provides an exception to the open and obvious danger doctrine if there are "special aspects" of the danger that make the risk of harm unreasonable. *See Lugo*, 464 Mich. at 517, 629 N.W.2d at 387. Page argues that the presence of the camera in the pool area is such a "special aspect." The Court does not agree. The presence of the camera does not render the danger of swimming alone any less obvious. Nor does it render the danger "effectively unavoidable" or impose "an unreasonably high risk of severe harm." *Id.* at 518, 629 N.W.2d at 387. Therefore the camera is not a "special aspect" that removes this case from the application of the open and obvious danger doctrine.

There is no dispute in this case that Westwood has complied with the above provisions. They are not a governmental entity, the hotel swimming pool is only 860 square feet, and there is no diving board provided. Accordingly, they are not required to provide lifeguard supervision of the pool. Further, Westwood has complied with Rule 2198(5) by prominently displaying a warning that there is no lifeguard on duty. *See* Exhibit 2 attached to Defendant's Brief in Support of Summary Judgment. In short, Westwood has complied with state law governing unsupervised public swimming pools.

Page has directed the Court to three cases which she contends establish that a factual issue exists as to whether Westwood has a duty to supervise the pool area. *See Braden v. Workman*, 146 Mich. App. 287, 380 N.W.2d 84 (1985); *Ald v. Cunningham*, 28 Mich. App. 281, 184 N.W.2d 360 (1970); *Kreiner v. Yezdbick*, 22 Mich. App. 581, 177 N.W.2d 629 (1970). None of these cases impose a duty upon a landowner to supervise an adult in swimming pool area. At most, these cases recognize the duty of reasonable care owed to an invitee and that based upon the particular facts underlying each case, judgment could not be entered as a matter of law. *See Braden*, 146 Mich. App. at 292, 380 N.W.2d at 87; *Ald*, 28 Mich. App. at 284-85, 184 N.W.2d at 362; *Kreiner*, 22 Mich. App. at 589, 177 N.W.2d at 633. *Kreiner* comes the closest to imposing a duty on a premises owner to supervise a swimming pool, however, any special duty imposed in that case has subsequently been limited to cases involving minors. *See Dep't of Civil Rights v. The Beznos Corp.*, 421 Mich. 110, 122, n. 5, 365 N.W.2d 82, 88 (1984); *Braden*, 146 Mich. App. at 292, 380 N.W.2d at

86-87 ("To the extent that Michigan may recognize such a special duty [to provide supervision at a swimming area], it has not yet done so for an adult. We decline to extend the doctrine to apply, as in this case, to a healthy 18-year-old adult.") (citation omitted).

Moreover, the Court is mindful that as a federal court sitting in diversity, when applying state law it "must proceed with caution in making pronouncements about state law." *Combs v. International Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (quoting *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999)). Therefore, "[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path." *Id.* (quoting *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994)). In the absence of clear authority requiring a swimming pool owner to supervise an adult, the Court will refrain from imposing such a duty on Westwood. Accordingly, the Court holds that, as a matter of law, Westwood did not have a duty to provide supervision of Page in the hotel swimming pool area.

IV.

Page continually directs the Court to the existence of the internal surveillance system and the placement of a camera in the pool area arguing that this creates a genuine issue of fact as to whether Westwood assumed a duty to provide supervision in the pool area.[4]

---

[4] Indeed at oral argument, Page's counsel candidly acknowledged that if there had not been any cameras in the hotel and pool area, they would not be seeking to hold Westwood liable for Page's death.

Michigan courts have recognized that where "one voluntarily undertakes to perform an act, having no prior obligation to do so, a duty may arise to perform the act in a nonnegligent manner." *Fultz,* 470 Mich. at 465, 683 N.W.2d at 591 (citing *Home Ins. Co. v. Detroit Fire Extinguisher Co., Inc.*, 212 Mich. App. 522, 529, 538 N.W.2d 424, 428 (1995); *Osman v. Summer Green Lawn Care, Inc.*, 209 Mich. App. 703, 532 N.W.2d 186 (1995), *rev'd on other grounds by Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 597 N.W.2d 28 (1999), KEETON, PROSSER & KEETON, TORTS, § 56, pp. 380-81 (5th ed., 1984)). The placement of a camera in the pool area does not amount to a gratuitous undertaking by Westwood and is not a material issue in this case.

The hotel surveillance system consists of six small cameras, placed in unobstrusive locations throughout the hotel. Westwood has placed cameras in two hallways, the front desk, the exercise area, the pool area, and an office area behind the front desk. From their fixed locations, the cameras provide views of a portion of each of these areas. The images from each camera are fed to a monitor placed in a private office area. The images are rotated at four second intervals on the monitor.

Based upon this undisputed evidence, a few things are readily apparent. First, the cameras are placed in inconspicuous locations. Thus, they are not readily observable to the hotel guests. Second, by placing only six cameras in the hotel, the surveillance system only covers a portion of the common areas of the hotel. For instance, there is no camera viewing the parking lot. Further, the placement of the cameras and their fixed nature, only provides

a limited view of the particular area being filmed. For example, the camera in the pool area is placed in the upper corner of the room which provides a view of most of the swimming pool. The camera, however, does not clearly show the hot tub or the walkways around the swimming pool. Moreover, there is no evidence that notice is provided to the guests that the hotel is under surveillance. In fact, there is no way for the invitee to know that a camera is even viewing them. Faced with this evidence alone, it is difficult for the Court to conclude that this camera system was anything more than an internal monitoring device for the benefit of the premises owner, not the invitees. And it is quite a leap of logic, to conclude, as Page would have it, that Westwood undertook a duty to monitor the safety of the hotel invitees by installing the system. Further, in light of the fact that Westwood has posted signs in the pool area stating that the area is unsupervised, it would not make sense to find that they undertook a duty to supervise the pool by placing a camera in an inconspicuous location.

This conclusion is reinforced by the deposition testimony of Brian Jensen, Westwood's general manager. Throughout Mr. Jensen's testimony he emphasized that the surveillance system was installed so that the hotel staff would have a general overview of the hotel. Deposition of Brian Jensen at 27-28, 41, 50. Further, Mr. Jensen stated that the surveillance system was in place to deter crime and prevent disruptive behavior in the hotel. *Id*. at 27-28, 66. This testimony coupled with the other evidence regarding the system leads the Court to a single conclusion: the surveillance system was an internal monitoring device placed in the hotel to assist the hotel staff in deterring crime, preventing disruptive behavior,

and keeping unauthorized people out of the hotel. It was not a gratuitous undertaking to supervise the hotel guests. As such, it does not give rise to a duty on the part of Westwood to continually monitor the surveillance system.

Page has directed the Court to *Holland v. Liedel*, 197 Mich. App. 60, 494 N.W.2d 772 (1992), for the proposition that genuine issues of fact remain as to whether Westwood assumed a duty to provide supervision of the hotel guests. *Holland* is distinguishable and does not apply to this case. In *Holland*, plaintiff, a tenant in defendant's apartment building, brought a negligence action after she was abducted from the apartment complex parking ramp. Prior to the abduction, defendant had employed a security guard in the parking ramp. At the time of plaintiff's abduction, however, defendant had replaced the guard with a camera surveillance system. The court held that the trial court did not err in denying defendant's motion for summary disposition holding that plaintiff had established genuine issues of fact as to whether defendant voluntarily assumed a duty to provide security. *Id.* at 64-65, 494 N.W.2d at 775.

The material facts of *Holland* are distinguishable from this case. In *Holland*, an issue of fact existed as to whether defendant voluntarily assumed a duty to provide security because defendant initially provided a security guard and then switched to a security camera. By providing a security guard, tenants could assume that the landlord was monitoring their security and continued to do so with the camera system. In this case, there is no evidence that hotel guests were given any notice that they were under surveillance. Therefore they had

no reason to assume that they were being constantly monitored by the hotel staff. By placing a camera in the pool area Westwood did not assume a duty to monitor the safety of the guests. There is no law in Michigan requiring such a duty and the Court will not impose one.

Accordingly, the Court holds that Westwood's motion for summary judgment is granted. Westwood did not owe a duty to Page to protect him from the open and obvious danger of swimming alone in an unsupervised pool, nor did they voluntarily undertake a duty to monitor the safety of the hotel guests by installing an internal surveillance system. Because Page has failed to establish the duty element of a prima facie case of negligence, her claim must be dismissed. An order will be entered consistent with this opinion.

Date:    April 18, 2005            /s/ Robert Holmes Bell
                                   ROBERT HOLMES BELL
                                   CHIEF UNITED STATES DISTRICT JUDGE